```
1                       UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF NEW YORK
2

3      -----------------------------------X
                                          :
4      YOEL WEISSHAUS,                     :
                                          :   11-CV-06616 (RKE)
5                        Plaintiff,        :
                                          :
6                 v.                       :
                                          :   500 Pearl Street
7      PORT AUTHORITY OF NEW YORK AND NEW  :   New York, New York
       JERSEY,                             :
8                                          :
                         Defendant.        :   March 20, 2017
9      -----------------------------------X

10
                    TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
11               BEFORE THE HONORABLE RICHARD K. EATON
                        UNITED STATES JUDGE
12

13     APPEARANCES:

14
       For the Plaintiff:        YOEL WEISSHAUS, Pro Se
15

16

17
       For the Defendant:        KATHLEEN G. MILLER, ESQ.
18                               Law Office of James M. Bagley

19

20

21
       Court Transcriber:        SHARI RIEMER, CET-805
22                               TypeWrite Word Processing Service
                                 211 N. Milton Road
23                               Saratoga Springs, New York 12866

24

25
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

2

1  (Proceedings began at 10:41 a.m.)

2         THE CLERK:  The United States District Court,

3  Southern District of New York is now in session.  The

4  Honorable Judge Richard K. Eaton presiding over Docket 11-CV-

5  06616, <u>Yoel Weisshaus v. Port Authority of New York and New</u>

6  <u>Jersey</u>.

7         Will the parties please introduce themselves for the

8  court starting with the plaintiff's counsel?

9         MR. WEISSHAUS:  My name is Yoel Weisshaus.  My

10 address is 235 [inaudible] Avenue, Apartment 2E, [inaudible]

11 646.

12        MS. MILLER:  Good morning, Your Honor.  My name is

13 Kathleen Miller.  I'm an attorney for the defendants, Port

14 Authority of New York and New Jersey.

15        THE COURT:  Okay.  Let's see, Ms. Miller.  Have you

16 appeared here before in this case?

17        MS. MILLER:  I was here in connection with the AAA

18 case as well as --

19        THE COURT:  Not this case but the AAA case.  Forgive

20 me.

21        MS. MILLER:  Gibson Dunn was representing the Port

22 Authority but --

23        THE COURT:  I'm sorry.

24        MS. MILLER:  Gibson Dunn was representing the Port

25 Authority on the motion for summary judgment.  I appeared on

3

1   that case on the motion to dismiss in front of Judge Holwell

2   and then I was here before Your Honor but Gibson Dunn was at

3   the table during the argument on the motion for summary

4   judgment in the AAA case.

5           THE COURT:  Okay.  Great.  Great, great, great.  But

6   you have appeared in this case before?

7           MS. MILLER:  In this case, yes.

8           THE COURT:  Okay, great.  Thank you.  So I'm going

9   to do this in reverse order just so that I can be brought up

10  to date.  Ms. Miller, we just -- can we rum through what has

11  happened up until this moment in this case?  Mr. Weisshaus,

12  I'm going to ask you to do the same thing but in a minute.

13          MS. MILLER:  Do you want me to go to the podium and

14  speak into the microphone?

15          THE COURT:  Yes, please.  The way our system works

16  you have to be at the lectern and speak into the microphone in

17  order for a record to be made.

18          MS. MILLER:  Do I need to hit a button?

19          THE COURT:  Nope.

20          MS. MILLER:  I didn't want to get the end and find

21  out I --

22          THE COURT:  Find out that you hadn't been recorded?

23          MS. MILLER:  That the cameras were running and I

24  forgot to -- Your Honor, this is a 2011 lawsuit that Mr.

25  Weisshaus brought challenging the toll increases.  We moved to

4

1   dismiss.   The motion to dismiss was initially granted by Judge

2   Preska.   It then went to the Second Circuit.   The Second

3   Circuit issued its decision on September 20, 2012 affirming in

4   part and denying in part the motion to dismiss.

5          What they wrote on -- based their decision is we

6   conclude that the district court properly dismissed Weisshaus'

7   claims based on his constitutional right to travel insofar as

8   it is analyzed its claims under the above standard [inaudible]

9   from the district court's dismissal of its constitutional

10  claims to the extent that they were brought as a challenge to

11  the Port Authority imposition of tolls regardless of the

12  amount.

13         They go on to say we conclude the district court

14  erred in failing to consider whether Weisshaus had adequately

15  pleaded a constitutional challenge, the reasonableness of the

16  amount of the tolls under the dormant -- under the dormant

17  commerce clause and accordingly we remand the case to the

18  district court to determine in the first instance whether

19  Weisshaus has adequately pleaded such a claim or should be

20  granted leave to amend the claim.

21         Then the court went on to state the district court

22  should analyze and they note here under Northwest Airlines see

23  as reasonable if one, it is based on some fair proximation of

24  the use of the facilities; two, is not excessive in relation

25  to the benefits conferred; and three, does not discriminate

5

1  against interstate commerce.

2      It also advised the district court that the court

3  could stay this action pending the determination of the case

4  AAA v. The Port Authority of New York and New Jersey which in

5  fact was done.  This case was stayed pending the decision in

6  that case and --

7      THE COURT:  And I stayed it; is that right?

8      MS. MILLER:  Yes.  The docket -- the docket

9  indicates, and I was reading it just a moment ago, that Mr.

10  Weisshaus appealed the decision of the Second Circuit, sought

11  a petition for certiorari in the United States Supreme Court.

12  The petition was denied on October 9, 2013.  So the only

13  remaining claim Mr. Weisshaus in the 2011 action is the

14  dormant commerce clause claim.

15      The three prongs that the Second Circuit indicated

16  were the relevant prongs to evaluate for determining the

17  viability of that claim were precisely the three prongs that

18  Your Honor --

19      THE COURT:  I understand the law.  So where we stand

20  at this moment is -- I was reading my own stay.  I don't know

21  if it dissolved of its own -- as a matter of law but I'm going

22  to put out an order this afternoon that lifts the stay in case

23  it hadn't been lifted and then where will we stand?

24      MS. MILLER:  In my view, Your Honor, this case

25  should be dismissed sua sponte based on the prior decision of

6

1  this court of November 18, 2016.

2  　　　THE COURT:  Okay.  As to where we stand then, the

3  motion to dismiss comes alive again and that has been briefed.

4  Is that true?

5  　　　MS. MILLER:  The initial motion to dismiss is fully

6  briefed.

7  　　　THE COURT:  Okay.  And so that is actually what is

8  before the court at this moment.  Is that right, the motion to

9  dismiss?  Or it will be when I lift the stay.

10  　　　MS. MILLER:  Well, if I remake the motion to dismiss

11  based on the initial papers yes, that would be before this

12  court.  That was decided though.

13  　　　THE COURT:  I'm sorry.

14  　　　MS. MILLER:  That initial motion was decided.  So

15  it --

16  　　　THE COURT:  So where we are right this moment is

17  we're on the -- we're at the remand.

18  　　　MS. MILLER:  Yes.

19  　　　THE COURT:  But the remand just brings back to

20  life -- after I lift the stay what would be back to life will

21  be a motion to dismiss and Mr. Weisshaus' case will be limited

22  to the dormant commerce clause.

23  　　　MS. MILLER:  Correct.

24  　　　THE COURT:  Thank you.  Mr. Weisshaus, why don't you

25  tell me where we stand at this moment.

1          MR. WEISSHAUS:  First I'd like to distinguish this

2    case between the AAA --

3          THE COURT:  Don't do that, please.  Please just tell

4    me where we are procedurally at this moment.

5          MR. WEISSHAUS:  Procedurally we stand now the court

6    has stayed the case and the stay has still -- the court has

7    not lifted the stay formally.  Informally it's presumed that

8    the AAA case has already been decided and there's a motion to

9    dismiss currently pending by the Port Authority.  I would like

10   to request the court to supplement briefing --

11         THE COURT:  Well, hold on a second.  So where we --

12   where we're going to stand this afternoon say when I lift the

13   stay is that your case will be back alive and that there will

14   be an outstanding motion to dismiss and the motion -- that

15   motion -- your case will be limited to the dormant commerce

16   clause claim.  Is that where you think we are?

17         MR. WEISSHAUS:  Let me explain.  That's why I wanted

18   to begin with the AAA case but the key is that the first

19   complaint that I make contain two flaws, that one the

20   dismissal sua sponte from the court.  There was no motion to

21   dismiss at the time.  It was based on the right to travel and

22   then the Robinson-Patman Act.  They were completely flawed and

23   they weren't a good way of putting forward the case but it

24   also contained arguments, the facts that could have been

25   reviewed under the dormant commerce clause.

8

1          THE COURT:  Bring me back.  So Judge Preska
2    dismissed your complaint sua sponte.
3          MR. WEISSHAUS:  Well, it wasn't Judge Preska.
4          THE COURT:  Who was it?
5          MR. WEISSHAUS:  It was Judge Batts.  Then it was
6    transferred to Judge Preska.
7          THE COURT:  Who was it first?
8          MR. WEISSHAUS:  I think Judge Deborah Batts.
9          THE COURT:  Deborah Batts, all right.  So Judge
10   Batts dismissed your complaint sua sponte.
11         MR. WEISSHAUS:  Yes, because basically I had filed
12   as a poor person and as a poor person under the statute of
13   1915, 28.1915 the courts are required to dismiss a complaint
14   if on its face there is portions that would be dismissal.  For
15   example, it contain --
16         THE COURT:  Okay.  Hold on a second, please.  I'm
17   just trying to figure out where we stand.  When she dismissed
18   that complaint, did you appeal it?
19         MR. WEISSHAUS:  Yes.
20         THE COURT:  And that was what went to the Court of
21   Appeals?
22         MR. WEISSHAUS:  Right.  Right.
23         THE COURT:  So it's that complaint that went to the
24   Court of Appeals?
25         MR. WEISSHAUS:  Right.  The Court of Appeals

9

1  determined that the court did not review the case under the

2  dormant commerce clause.

3          THE COURT:  Okay.  So then the case was remanded.

4          MR. WEISSHAUS:  Yes.

5          THE COURT:  And then -- was it remanded to Judge

6  Preska?

7          MR. WEISSHAUS:  And Judge Preska transferred it to

8  the roster of the court and the Southern District assigned it

9  to Your Honor.

10         THE COURT:  Well, first Judge Holwell -- it was --

11  was Judge Holwell ever in on this one?

12         MR. WEISSHAUS:  No.

13         THE COURT:  He was never in on this one?

14         MR. WEISSHAUS:  Never on the case.

15         THE COURT:  So did Judge Preska take any action?

16         MR. WEISSHAUS:  Once it was remanded no, but this

17  court did take action.

18         THE COURT:  So I -- I wrote an order as I recall and

19  I stayed the case.

20         MR. WEISSHAUS:  No --

21         THE COURT:  No, I didn't?

22         MR. WEISSHAUS:  First is the court allowed to amend

23  the complaint.  I amended it to clear up whatever the

24  confusions were basically setting for the case that my issue

25  here is the price.  Okay.  And I'm challenging everything that

10

1    is incorporated in the price that is extraneous.

2              THE COURT:  Okay.  Well, I said you could amend the

3    complaint?

4              MR. WEISSHAUS:  Yes.

5              THE COURT:  Okay.  And you amended the complaint?

6              MR. WEISSHAUS:  Yes.

7              THE COURT:  And -- hold on a second.  I'm just

8    trying to get this straight.  Then was there a new motion to

9    dismiss on the amended complaint?

10             MR. WEISSHAUS:  Yes.  That's only one motion.

11   There's never been another motion.

12             THE COURT:  Well, there was a motion to dismiss the

13   unamended complaint, the initial complaint.  Then --

14             MR. WEISSHAUS:  No, no, that was sua sponte by the

15   district court.  There was no filing.  There was no formal

16   filing.

17             THE COURT:  I get it now.  All right.  Thank you,

18   thank you, thank you.  You're helping me a lot here.  Then

19   there's the motion to dismiss.  So the motion to dismiss is

20   based -- has only to do with the dormant commerce clause

21   claim.

22             MR. WEISSHAUS:  The motion to dismiss is -- has if I

23   remember correctly it's focused on one or two things.  First,

24   that it's -- this case is limited by the law of the case from

25   remand.  It argues that it cannot -- the amended complaint was

11

1   not permitted to include other cause of action.  The answer

2   for it that I provided to --

3          THE COURT:  No, no, no.  Please don't do that.  So

4   the motion to dismiss has to do with your amended complaint.

5          MR. WEISSHAUS:  Right.

6          THE COURT:  And --

7                   [Pause in proceedings.]

8          MR. WEISSHAUS:  Then there was --

9          THE COURT:  I'm trying to work this out in my head.

10  And, Ms. Miller, are you the lawyer -- did you write the

11  briefs having to do with the motion to dismiss on the amended

12  complaint?

13         MS. MILLER:  Yes, I did, Your Honor.

14         THE COURT:  Thank you.  Then -- I'm going to give

15  you another chance to explain all of this to me.  Then you put

16  in papers in opposition to --

17         MR. WEISSHAUS:  Correct.

18         THE COURT:  Mr. Weisshaus -- to opposition to the --

19         MR. WEISSHAUS:  Motion to dismiss.

20         THE COURT:  -- motion to dismiss.  And are those all

21  the papers that we have before us at this -- I have before me

22  at this moment?

23         MR. WEISSHAUS:  Currently submitted, yes.  I would

24  like to request the court to supplement that record for two

25  reasons.  One --

1    THE COURT:  Hold on a second.  If you could sit down

2  for just a second.  I'm just trying to get straight the --

3  where we stand procedurally.

4    Ms. Miller, do you have anything to add to this

5  whole where we stand procedurally thing?

6    MS. MILLER:  I just -- I just want to clarify the

7  record, Your Honor.

8    THE COURT:  Yes, please.

9    MS. MILLER:  There was an order -- and I referred to

10 Judge Preska's order earlier.  The initial order of October

11 24, 2011 dismissing the complaint was from Judge Deborah

12 Batts, and she stated in her discussion that affording the

13 complaint, the liberal reading to which it is entitled the

14 court nevertheless finds that plaintiff has failed to state a

15 claim, a valid claim.  I'm sorry.

16    Mr. Weisshaus -- then a judgment was issued on

17 October 24, 2011 and Mr. Weisshaus moved for reconsideration.

18 Judge Preska then wrote an order and decision dated December

19 11 -- December 8, 2011 affirming the dismissal by Judge Batts.

20 That was appealed to the Second Circuit.  I then read the

21 court the decision.

22    After that Mr. Weisshaus served an amended complaint

23 in this court.  We again moved to dismiss.  The motion I

24 believe was fully briefed.  I think he submitted an

25 opposition.  I believe we submitted reply papers.  At that

13

1   point Mr. Weisshaus attempted to move for discovery.   We

2   requested a stay.   This court put a stay into effect which has

3   been in effect during the pendency of the AAA proceeding also

4   from 2011 to 2016.

5            So we submit, Your Honor, that all of the factual

6   information has been put before this court.   The parties --

7            THE COURT:   This is a motion to dismiss; right?

8            MS. MILLER:   Yes.   Yes, but Mr. Weisshaus is now

9   saying to this court that he wants to amend because he has

10  additional facts he wants to put before this court.   The

11  issues here are legal issues.   All of the discovery -- since

12  the discovery was done in the AAA case as this court knows it

13  was referred to Judge Pitman for several years while this

14  discovery unfolded.

15           There's nothing new that can be added to this case.

16  So we respectfully submit that no further --

17           THE COURT:   I'm going to let you make your argument

18  in a moment.   You can sit down.

19           Now, I guess I have an idea of where we are.   Mr.

20  Weisshaus, what should we do now?

21           MR. WEISSHAUS:   There's two steps as the court

22  obviously will have to decide the motion to dismiss whether to

23  grant it or deny it.   I will request denial but before the

24  court gets to -- into the decision making of that process I

25  would like to supplement it with a sur reply or sur opposition

14

1  and allow the court to [inaudible] the equal rights based on

2  addressing the AAA decision of what parts the facts of the

3  complaint, what parts it doesn't affect, and also to

4  addressing some other developments I've had in this case.

5       Before going to that direction I'd also like to

6  point out there's procedural differences in this case that the

7  court acknowledges in its decision in the AAA case that AAA

8  didn't do its math, they're alleging things that are not in

9  the complaint and the court refused to decide.

10      My complaint contains most particularly the biggest

11  issue that had nothing to do with the AAA case.  A $2.00

12  penalty that the Port Authority charges per axle for every

13  person who pays with cash.  That, for example, is absolutely

14  has nothing to do with the proximation of facilities.  It's

15  discriminating in interstate commerce because the commerce

16  clause gives the only regulation of currency to Congress.  It

17  doesn't [inaudible] the states to regulate cash and the fact

18  that the state is penalizing, the state agency is penalizing

19  commuters for paying in cash that raises a serious issue of

20  the commerce clause that was not addressed in AAA case.  I can

21  go on and on and on.

22      THE COURT:  You don't have to.  Is this particular

23  issue addressed in the papers that are now before the court?

24      MR. WEISSHAUS:  Yes.

25      THE COURT:  Oh, it is.

15

1          MR. WEISSHAUS:  In the amended complaint they have

2   the first cause of action.  I've stated it in several

3   different forms.  The Port Authority --

4          THE COURT:  But how about in your answer to the

5   motion to dismiss?

6          MR. WEISSHAUS:  I've also addressed it.

7          THE COURT:  Okay.

8          MR. WEISSHAUS:  The Port Authority argues that it is

9   barred by the law of the case because it was remanded for the

10  dormant commerce clause and cannot address this issue.  I have

11  addressed the idea of the law of the case.  The law of the

12  case is -- was -- is a doctrine based on allowing a case to

13  proceed on its normal course but limit it to the issues that

14  are not foreclosed.  The Second Circuit never foreclosed the

15  issue of the penalty for payment of cash.  Never addressed all

16  the other arguments in the complaint, all the other claims for

17  relief.  The only thing that the Second Circuit did limit and

18  throw it out from court was the idea of the right to travel

19  and the Robinson-Patman Act.  Those are the two things in

20  any -- and also state law action that involves unjust

21  enrichment because that would have required a notice of claim.

22          The Second Circuit held that I didn't file a timely

23  notice of claim, et cetera.  So those are -- and I'm not

24  addressing those.  Right now it's focused on the dormant

25  commerce clause what constitutes interstate commerce,

16

1  discrimination against interstate commerce the court is well

2  aware is a very broad field of law and it encompasses many

3  areas of constitution and including that would be the penalty

4  for payment in cash.  That would be a subject that was not

5  addressed in the AAA case.  That's just one of them.

6       THE COURT:  Okay.  But these things are all

7  addressed in your papers.

8       MR. WEISSHAUS:  Yes.

9       THE COURT:  Okay.

10      MR. WEISSHAUS:  But what I would like to supplement

11  if I could ask is first as I mentioned the AAA differences.

12  Then through this -- I -- as the court may recall I had a

13  cause of action that the Port Authority was depriving me from

14  a FOIA request.  In the end, the Port Authority did issue a

15  FOIA request decision and I dismissed that portion of the

16  complaint without prejudice and commenced an Article 78 action

17  in state court.

18      From that case came out --

19      THE COURT:  You dismissed it without prejudice?

20      MR. WEISSHAUS:  Yes.

21      THE COURT:  How?

22      MR. WEISSHAUS:  I asked the court and the court

23  allowed it.

24      THE COURT:  Was it me?

25      MR. WEISSHAUS:  Yes.  It was addressed -- there's an

17

1   order of it.

2           THE COURT:  Okay.

3           MR. WEISSHAUS:  If I remember correctly.  I don't

4   have it before me but based on my memory.

5           THE COURT:  Okay.

6           MR. WEISSHAUS:  So it's the fifth claim for relief

7   which was dismissed without prejudice.  The Port Authority did

8   not object to it.

9           Then we have an Article 78 to review the decision of

10  the Port Authority in that FOIA request.  So some documents

11  were produced and then the -- to keep the story short is

12  basically I received some proposal and demonstrations that the

13  Port Authority had studied what's called affordability

14  envelope.  That means what is the maximum number we can push

15  the envelope in terms of price.  That study was done based on

16  the papers is in 2008, 2009.

17          After that study was concluded that's when they came

18  up with this whole budget and this whole capital plan and

19  that's when -- for example, to point out just briefly, is that

20  part of the Port Authority -- the -- part of the affordability

21  plan is the demonstration shows that it's a proposed plan of

22  the capital plan $5.2 billion.  According to the MBD

23  affordability envelope, that is $5.01 billion that would have

24  brought in those years.  So they just brought the budget right

25  above the capital plan, right above the affordability envelope

1   not considering how it would affect consumers in terms of

2   price.  For example, per axle it cost like two hours working

3   minimum wage just to pay that toll.  All of that we don't know

4   what was considered until that affordability envelope

5   documents are released.  Those documents -- that request I've

6   made a new FOIA request to the Port Authority dated May 11th.

7   We're still waiting for them to decide is what I requested

8   them to reveal to me the affordability envelope documents.

9           So in terms of -- even if the court wants let's say

10  considering a motion to dismiss I would ask the court for at

11  least some discovery before that so we can address like issues

12  of the affordability envelope because how did they come up

13  with that price that everyone says is burdensome.

14          THE COURT:  Normally there isn't any discovery

15  related to the motion to dismiss.

16          MR. WEISSHAUS:  But it could be turned into a motion

17  to defer to summary judgment like it was done in the AAA case.

18  So that's an option just to mention.

19          THE COURT:  Thank you.  Ms. Miller, what do you have

20  to say to all of that?

21          MS. MILLER:  I'm not sure I quite understand

22  everything Mr. Weisshaus is asking for, Your Honor.  If he's

23  asking this court or telling this court that he's only

24  proceeding on the dormant commerce clause claim I think that's

25  been fully briefed and the question of whether there was a

19

1   study to determine the maximum amount they can raise the tolls

2   is pretty irrelevant to the fact.  They've already made the

3   decision.  The tolls went into effect.  Those amounts were

4   evaluated by this court very thoroughly, a decision of

5   November 2016 on the summary judgment in AAA.

6          There are no further facts to be added.  Some

7   preliminary study that was done before the tolls were raised

8   is completely irrelevant.  It's the number that the tolls are

9   that this court looked at.  I know Mr. Weisshaus objects to

10  the fact that there's additional price.  The tolls are cheaper

11  if you pay by EZ-Pass because they don't have to man the toll

12  booths obviously.  If you're paying by cash you're paying the

13  full value of the toll.  There's a discount.  Not a penalty.

14  There's a discount if you pay by EZ-Pass and there are

15  discounts if you buy multiple EZ-Pass commuter tickets but Mr.

16  Weisshaus' objection to the tolls unreasonably burdening the

17  poor as this court recognized as every court has recognized

18  since 1989.

19         The bridges and the tunnels are part of an

20  interstate commerce system that also includes the ferries and

21  the path trains which provide much lower rates for

22  transportation across the Hudson.  So it's not a single choice

23  that one person has to make.  There are a number of options,

24  many cheaper options to crossing the Hudson River than driving

25  over the George Washington Bridge.

20

1        But this court has analyzed thoroughly in its

2    decision the tolls, the amount of the tolls and the criteria

3    under the Northwest Airlines case for evaluating whether those

4    tolls were a violation of the dormant commerce clause and

5    there's no reason to go back and open discovery into the same

6    facts because there are no new facts, and go through that

7    process again.

8        I would just like to remind the court that in the

9    Second Circuit decision to the extent that Mr. Weisshaus is

10   asking to bring any other state claims, the Second Circuit

11   noticed that -- noted, sorry, that Mr. Weisshaus' failure to

12   serve a notice and claim before filing suit deprived the

13   district court of jurisdiction over any state law claim.  So

14   there is no possibility for bringing state law claims here

15   because that notice of claim has to be filed within one year

16   of the incident and Mr. Weisshaus failed to do that.

17       The court also addressed Mr. Weisshaus' argument

18   before the Second Circuit that he had failed to bring a number

19   of meritorious claims that he now wanted to bring in the case

20   and they pointed out that Rule 59 was not an opportunity to

21   get a second bite out of the apple by adding new claims.  They

22   said in fact it is well settled that Rule 59 governing the

23   motions to alter, amend a judgment is not a vehicle for

24   presenting the case under new theories or otherwise taking a

25   second bite of the apple.

21

1       So to the extent Mr. Weisshaus is asking this court
2   to consider new claims or new matters I believe that the
3   Second Circuit has already disposed of that.  Thank you.
4       THE COURT:  So as far as things that can be
5   settled -- that can be brought up today, Mr. Weisshaus, you
6   would like supplemental briefing.  Is this true?
7       MR. WEISSHAUS:  Yes.
8       THE COURT:  Okay.  So if you could talk in the
9   lectern and just say is -- as precisely as you can what you
10  would like to do in this supplement briefing.
11      MR. WEISSHAUS:  Okay.  In the supplemental briefing
12  will address the differences based on the decision of the AAA
13  case.  The differences between my case to the AAA case because
14  there's been a lot of overlapping.  Obviously there's been a
15  relationship but AAA was fishing the whole time whether the
16  money was being used for the World Trade Center.  Fine.  No
17  problem.  Those two, three paragraphs in the complaint, in the
18  amended complaint that mention the World Trade Center I'm
19  willing to dismiss it without prejudice so they don't confuse
20  the court.
21      THE COURT:  Well, if I were going to dismiss them I
22  would dismiss them with prejudice.  Wouldn't I?
23      MR. WEISSHAUS:  Well, assuming that the rest of the
24  amended complaint is valid.  It's able to go forward.  That's
25  point one.  Then there is the concept of the rest of the

22

1   complaint which was not addressed in the AAA decision.  For

2   example, the surcharge.

3            If I can brief the court.  In 2008 when the Port

4   Authority increased the toll price it was $8.00 per axle.  The

5   discount was offered for those who paid EZ-Pass.  It went to

6   $6.00.

7            THE COURT:  I understand.  This is in your papers;

8   right?

9            MR. WEISSHAUS:  Yes.

10           THE COURT:  Okay.  If you don't -- just say

11   precisely as you can -- we'll start again.  What you would

12   put -- what maters would be covered in the supplemental

13   briefing.

14           MR. WEISSHAUS:  Okay.  Number one, that the court

15   said in the decision, in the AAA --

16           THE COURT:  The first thing is the distinction, the

17   differences between the --

18           MR. WEISSHAUS:  AAA and my case.

19           THE COURT:  Your case and AAA.  What?  Tell me.

20           MR. WEISSHAUS:  Yes.  Then I would like to briefly

21   just address how the affordability envelope would make --

22   would have made a difference in my opposition to the motion to

23   dismiss and how it could help aid in the case going forward.

24   A brief discussion.

25           THE COURT:  These are facts that you have learned

23

1  from the FOIA requests.

2          MR. WEISSHAUS:  Right.

3          THE COURT:  Okay.

4          MR. WEISSHAUS:  It would have changed even the

5  posture of the amended complaint.

6          THE COURT:  Okay.  And then anything else?

7          MR. WEISSHAUS:  Yes.  And also if I can point out

8  just to reply that the surcharge of $2.00 is on top of the

9  regular price of the per axle.  In other words --

10         THE COURT:  But that's already contained in your

11 initial opposition to the motion to dismiss; isn't it?

12         MR. WEISSHAUS:  Yes.  I just wanted to reply to

13 that.

14         THE COURT:  Okay.  All right.

15         MR. WEISSHAUS:  So the record indicates my position.

16         THE COURT:  Okay.

17         MR. WEISSHAUS:  In terms of like -- of looking

18 towards discovery I'm also not looking to go this whole

19 direction that AAA went because my case is not so much about

20 fishing or whether the Port Authority has an email somewhere

21 about using the money for World Trade Center, et cetera.  This

22 case is all about the price.  It's how it affects people who

23 pay the price.  It looks at the minimum wage and the toll

24 being doubled than the minimum wage.  It looks at the income

25 taxes a person pays for working in a regular day in New York

24

1  City, income taxes taken combined and the toll is double than

2  that amount of money.  Obviously if the legislative would

3  increase minimum wage --

4          THE COURT:  That's okay.  I understand.  That's the

5  next -- is there anything else you'd like to put in your

6  papers?

7          MR. WEISSHAUS:  That's it.  I'd like to stick to

8  addressing those two differences.  Thank you.

9          THE COURT:  Thank you.  You can sit down.

10         Ms. Miller, is there any reason why there shouldn't

11 be supplemental briefing here?  You have to come up to the

12 lectern.  I'm afraid --

13         MS. MILLER:  Well, if it's not too burdensome for

14 the court I have no objection to supplemental briefing as long

15 as we get to respond to whatever it is Mr. Weisshaus is adding

16 to the motion to dismiss.

17         THE COURT:  All right.  Thank you.  Now, is there

18 anything else we should -- I'm grateful to you both for

19 bringing me up to date on this.  Is there anything else we

20 should take up today?

21         MS. MILLER:  I don't believe so, Your Honor.

22         THE COURT:  Mr. Weisshaus.

23         MR. WEISSHAUS:  I would submit to the court

24 [inaudible].

25         THE COURT:  Thanks.  Well, I'm going to take all

25

1    this under advisement.  At a minimum this afternoon I'll put

2    out an order that lifts the stay and then I'll think about Mr.

3    Weisshaus' motion for supplemental briefing and we'll go from

4    there.  So thank you both very much.

5              THE CLERK:  All rise.

6              MR. WEISSHAUS:  Thank you.

7              THE CLERK:  The court stands adjourned.

8    (Proceedings concluded at 10:41 a.m.)

9                        *  *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                               _____

6                                    Shari Riemer, CET-805

7   Dated:   April 5, 2017

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25