UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

YOEL WEISSHAUS,

                                        Plaintiff,

                                                              11 Civ. 6616 (RKE)

            -against-

                                                              **ORDER**

PORT AUTHORITY OF NEW YORK
AND NEW JERSEY,

                                        Defendant.

-----------------------------------------------------------------------x

## **ORDER**

The Court has received Plaintiff's letter-motion for, *inter alia*, the designation of a Rule 30(b)(6) witness to address perceived discrepancies in Defendant's spreadsheets concerning ITN toll revenues, operating expenses, capital expenditures, and debt service, ECF Nos. 134-2, 136-1, 136-2, 139-1 and 141-1. *See* ECF No. 142. The Court has also received Defendant's response, ECF No. 143, and Plaintiff's reply, ECF No. 144.

By his motion, Plaintiff asks the Court to designate a Rule 30(b)(6) witness[1] to "certify the accuracy of the disclosures as consistent with the records of the Port Authority and [provide] a list of the facilities for each year that are subject to the ITN." Plaintiff's motion also requests that the

---

[1]       Rule 30(b)(6) provides for a witness who can be deposed on behalf of an organization. *See* FED. R. CIV. P. 30(b)(6) ("In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.").

designated witness "be able to fully answer questions at a deposition regarding the records disclosed in [the spreadsheets, and] . . . be able to fully answer questions at a deposition regarding the annual reports from 2007 through 2020." ECF No. 142 at 3.

For the following reasons, the Court denies Plaintiff's motion in its entirety and directs that the parties shall proceed with the discovery schedule as set by the Court's most recent scheduling order, ECF No. 138.

Plaintiff has sought, and obtained, ample discovery in this case, through document production and the deposition of Michael Fabiano, a witness designated under Rule 30(b)(6) to testify on behalf of Defendant Port Authority. *See* ECF No. 123-1. Following Mr. Fabiano's deposition, the Court directed the Port Authority to provide information based on its annual reports/financial statements via spreadsheets showing (1) "gross toll amounts per fiscal year (*i.e.*, not revenue from all sources), collected per ITN facility, for the relevant years underlying the Port Authority's financial statements"; (2) "gross amounts for operating expenses, less any allocated expenses that are connected with non-ITN facilities, recorded by fiscal year from 2007-2020 for each ITN facility"; (3) "gross amounts of capital expenditures, excluding write-offs, for each ITN facility by fiscal year from 2007-2020"; and (4) "[g]ross amounts for debt service payments recorded by fiscal year from 2007-2020 for all governmental (ITN) bonds." *See* ECF Nos. 133, 135, 140. The Port Authority submitted spreadsheets showing the requested information in the requested format. *See* ECF Nos. 134, 136, 139, 141.

In its order dated September 17, 2021, ECF No. 133, the Court included a definition of the ITN with reference to prior opinions.[2] In its order dated October 20, 2021, ECF No. 140, the Court

---

[2]        As this Court has previously held,

The Port Authority is a bi-state governmental agency created by compact between

adopted a definition of "tolls" for purposes of this case, relying on the parties' submissions.[3]

Plaintiff's sole remaining claim seeks to determine whether "the setting of tolls to fund projects unconnected to the Port Authority's '[interstate] transportation system' ('ITN')" violated the Dormant Commerce Clause. *Weisshaus v. Port Auth. of N.Y. & N.J.*, 814 F. App'x 643, 645 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1061 (2021). In issuing the aforementioned orders, the Court assisted Plaintiff in obtaining the information needed to compare toll revenues to actual expenditures for the ITN during the relevant period. This comparison of toll revenues to ITN expenditures is central to the "relevant inquiry" of "whether toll revenue from ITN facilities remain[ed] after accounting for ITN expenditures." *See* ECF No. 133 at 3. That is, as a threshold

---

New York and New Jersey with consent of the United States Congress, and is responsible for construction, maintenance, operation, and control of all vehicular bridges and tunnels connecting New York and New Jersey, including the Bayonne Bridge, the Outer bridge Crossing, the Goethals Bridge, the George Washington Bridge, the Holland Tunnel, and the Lincoln Tunnel. . . . In addition, the Port Authority operates "the interstate Port Authority Trans–Hudson ("PATH") Rail System; three bus terminals (the Port Authority Bus Terminal, George Washington Bridge Bus Station, and Journal Square Transportation Center); two truck terminals; seven marine terminals; four airports; two heliports; and the sixteen-acre World Trade Center site." . . . *The Tunnels, Bridges & Terminals Line Department, the PATH Rail System Line Department, and the ferries program collectively comprise the "Interstate Transportation Network" (the "ITN").*

*Weisshaus v. Port Auth. of N.Y. & N.J.*, No. 11 CIV. 06616 (RKE), 2018 WL 6619736, at *1 (S.D.N.Y. Dec. 18, 2018) (not reported in Federal Supplement), *aff'd in part, vacated in part, remanded,* 814 F. App'x 643 (2d Cir. 2020) (emphasis added) (internal citations omitted).

[3]     The definition of "tolls" for purposes of this case is as follows:

"[T]olls" shall be defined as including fees which are imposed by the Port Authority's Tunnels Bridges and Terminals Department for use by the general public of its bridges and tunnels, along with violation penalties and fees that are included in the operating revenues reported in the Port Authority's annual financial statements.

ECF No. 140.

Case 1:11-cv-06616-RKE   Document 145   Filed 12/09/21   Page 4 of 8

Court No. 11-6616                                                              Page 4

matter, Plaintiff must prove that there was toll revenue left over after the payment of all ITN-related expenditures during the period in question that would be available for purposes other than expenditure on ITN facilities, or it is difficult for the Court to see how his claim can stand.

The scope of discovery is limited by relevance. *See* FED. R. CIV. P. 26(b)(1) (emphasis added) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). When seeking to depose a witness on behalf of an organization under Rule 30(b)(6), a party must "describe with reasonable particularity the matters for examination." *See* FED. R. CIV. P. 30(b)(6).

The four "issues" Plaintiff raises as the basis for requesting designation of new witness(es) do not seek information relevant to his sole remaining claim. In addition, Plaintiff's request for a list of ITN facilities ignores the definition of the ITN already on the record.

Issues 1, 3, and 4 raise purported discrepancies between the Port Authority's annual reports/financial statements and the spreadsheets it provided in compliance with the Court's orders. *See* ECF Nos. 133, 135. To the extent that Plaintiff desires further discovery in order to compare the spreadsheets (showing isolated, gross amounts) and the financial statements, the information he seeks is not relevant to his sole remaining claim. Again, the "relevant inquiry" in this case is whether toll revenues were spent on non-ITN-related projects. The spreadsheets showing "gross amounts" of toll revenues, operating expenses, capital expenditures, and debt service payments for the ITN permit Plaintiff to compare isolated ITN toll revenues and ITN expenditures. Plaintiff has not shown how discovery enabling him to make line-by-line comparisons of the spreadsheets to

the financial statements is relevant to his claim—nor is the Court convinced that such an exercise would result in a true "apples-to-apples" comparison of relevant financial information. The entire purpose for the preparation of the spreadsheets was to provide information as to gross, actual ITN toll revenues and gross, actual ITN expenditures, based on—but not mirroring—the financial statements.

Relatedly, Issue 2 states that the Port Authority did not include toll revenues for certain ITN facilities in its toll revenues spreadsheet, ECF No. 136-1, even though its operating expenses spreadsheet, ECF No. 141-1, included those facilities (specifically, "the Ferry Transportation, PATH, Journal Square Transportation Center, Port Authority Bus Terminal and other facilities that are routinely listed in the annual reports under the Bridges and Tunnels section"). *See* ECF No. 142 at 1-2. For Plaintiff, this is a discrepancy that warrants the designation of a Rule 30(b)(6) witness to address why toll revenues were only reported for some ITN facilities, while operating expenses were reported for *all* ITN facilities. *See* ECF No. 142 at 2 ("The discovery ought to be on the entire ITN because the ITN is viewed as a single facility.").

Here, too, however, Plaintiff has failed to request any information relevant to his claim. The alleged "discrepancy" between ITN facilities that report toll revenues and those that report operating expenses is not a discrepancy at all, but a misunderstanding, on Plaintiff's part, of the Court's instructions. Again, Plaintiff's sole remaining claim concerns "the setting of tolls to fund projects unconnected to the Port Authority's '[interstate] transportation system' ('ITN')." *Weisshaus*, 814 F. App'x at 645. Thus, the Court ordered the Port Authority to isolate ITN *toll* revenues (as opposed to other kinds of operating revenue), to be compared with operating expenses, capital expenditures, and debt service payments for the *entire* ITN. Apparently, some of the ITN's facilities do not collect tolls. In any event, the Port Authority has stated that it provided,

"[i]n accordance with this Court's order of September 17, 2021, . . . [a] spreadsheet showing the gross amounts of toll revenue recorded by fiscal year for each year from 2007-2020 for each ITN facility." ECF No. 136. Put another way, the Port Authority has affirmatively represented that it has submitted all toll revenues collected by all ITN facilities.[4] The scope of the ITN has been defined in prior orders and opinions by this Court. Plaintiff may not redefine the ITN, nor expand the scope of discovery to which he is entitled, at this late date.

Finally, Plaintiff's motion also requests a Rule 30(b)(6) witness "who will be able to fully answer questions at a deposition regarding the records disclosed in [the spreadsheets, and] . . . who will be able to fully answer questions at a deposition regarding the annual reports from 2007 through 2020." ECF No. 142 at 3. These requests are overbroad and vague, especially in light of the discovery Plaintiff has already obtained, and do not identify with "reasonable particularity" the matters with respect to which Plaintiff intends to examine a potential witness. *See* FED. R. CIV. P. 30(b)(6). Therefore, the Court declines to designate another witness to testify on behalf of the Port Authority.

At all times, it is important to keep in mind that the Port Authority pools its revenues (including toll revenues) in common funds: the General Reserve Fund and the Consolidated Bond Reserve Fund. These funds are maintained for making expenditures (including operating expenses, debt service payments, and capital expenditures) for the entire agency, including non-ITN facilities. *See* ECF No. 133 at 3. As the Court has previously observed, this pooling of ITN

---

[4]    Although this issue was not raised in Plaintiff's letter-motion, the Court observes that the Port Authority's ITN toll revenue spreadsheet was submitted prior to the Court's adoption of a definition of "tolls" that includes "violation penalties and fees that are included in the operating revenues reported in the Port Authority's annual financial statements." ECF No. 140; *see* ECF No. 136-1. Accordingly, the Court directs the Port Authority to confirm that the toll revenues spreadsheet currently on the record comports with this definition, and if not, to submit an updated ITN toll revenues spreadsheet.

revenues in the Port Authority's funds can be likened to a bushel of wheat being shipped by a farmer to a grain elevator and mixed with wheat from other farmers before being shipped to a flour mill. It would simply not be possible to trace that bushel of wheat to a loaf of bread, because the bushel no longer exists as a bushel. The wheat is fungible and so is the toll revenue fungible once it enters the pool. *See* ECF No. 133 at 4-5.

Because toll revenue cannot be traced on a dollar basis to its eventual expenditure, the "relevant inquiry" is the one that the Court has outlined here and in prior orders: a comparison between the gross amount of ITN toll revenues and the gross amount of the ITN's expenditures for the relevant time period. As Magistrate Judge Pitman stated when ruling on a discovery motion in a similar case, *Automobile Club of New York, Inc. v. Port Authority of New York & New Jersey*, "[i]f the toll revenue is equal to or less than the ITN expenses [including capital, operating, debt service] . . . it really doesn't matter how the World Trade Center site development [a non-ITN facility] is being funded. If, on the other hand, the tolls exceed the ITN expenses, then maybe we have a different situation." No. 11 CIV. 6746, 2012 WL 4791804 (RKE)(HBP), at *2 (S.D.N.Y. Oct. 9, 2012) (not reported in Federal Supplement).

Accordingly, it is hereby

**ORDERED** that Plaintiff's letter-motion, ECF No. 142, is denied in its entirety; and it is further

**ORDERED** that, on or before December 16, 2021, Defendant shall submit by letter its confirmation that the toll revenues spreadsheet, ECF No. 136-1, is in compliance with the definition of tolls adopted by the Court, ECF No. 140; and it is further

**ORDERED** that, if ECF No. 136-1 does not comply with the Court's definition of tolls, Defendant shall, on or before December 23, 2021, submit an updated spreadsheet showing gross

Court No. 11-6616                                                                      Page 8

toll revenues for each ITN facility by fiscal year from 2007-2020, in spreadsheet (.pdf or .xlsx) form; and it is further

      **ORDERED** that, in accordance with the scheduling order dated October 15, 2021, ECF No. 138, document discovery is closed; and it is further

      **ORDERED** that, in accordance with the same, the deadline has passed for issuing subpoenas to additional Port Authority witnesses for deposition; and it is further

      **ORDERED** that the parties shall comply with the remaining deadlines in this case, absent timely requests for extension.

      **SO ORDERED**.


                                                              /s/ Richard K. Eaton
                                                        U.S.D.J., by Designation

Dated: December 9, 2021
       New York, New York